IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 04-cv-02418 - LTB - CBS

VIRGINIA WALKER,

    Plaintiff,

v.

LIFE CARE CENTERS OF AMERICA, INC./AMERICAN LIFESTYLES, INC.,

    Defendants.

_____

ORDER
_____

    This case is before me on Defendants Life Care Centers of America/American Lifestyles, Inc.'s (collectively "LCCA") Motion for Summary Judgment. In this motion, LCCA argues that it is entitled to judgment as a matter of law on Plaintiff Virginia Walker's ("Walker") claims for age and sex discrimination; breach of contract; promissory estoppel; and wrongful termination in violation of public policy. After consideration of the motion and all related pleadings, as well as the case file, I grant the motion in part and deny it in part for the following reasons.

## I. Facts

    1. Beginning February 9, 1998, LCCA employed Walker as the general manager of the Bridge of Life Care Center at Longmont (the "Longmont Facility"), an assisted living facility for seniors who are unable to live independently but require less care than that provided at nursing homes. As general manager, Walker was the highest ranking and highest paid employee at the Longmont Facility. Walker's responsibilities as general manager included "implement[ing] public relations procedures to ... attain/maintain proper census."

2. At the time she was hired by LCCA, Walker was 50 years old. Between October of 2001 and October of 2003, the majority of the general managers employed by LCCA were women and 40 years of age or older. Currently, over 80% of the general managers employed by LCCA are women, and over 70% of the general managers employed by LCCA are 40 years of age or older.

3. As an employee of LCCA, Walker received a publication entitled Employment Guidelines for Corporate Associates (the "Guidelines") which provided as follows:

> This handbook is not a contract and contains no promises, guarantees, representations and agreements, and in no way amends your agreement of employment.
>
> [LCCA] abides by an employment-at-will philosophy, except where there is an express written agreement to the contrary. No contrary agreement may be implied from the contents of this handbook or from any other source ....

The Guidelines also contained the following provisions regarding employee discipline:

> Generally, an associate will be subject to the following stages of corrective action:
>
> 1. First written warning
> 2. Second written warning
> 3. Suspension without pay pending investigation ....
>
> **This will be our usual and preferred process for correcting behavior. However, conduct of any type that causes management to lose confidence in your ability to perform your assigned job adequately may result in immediate discharge.**

4. Walker also received an Assisted Living Policy and Procedures Manual (the "Manual") which contained the following provisions regarding termination:

> 1. Reasons for involuntary termination include, but are not limited to:

      ...
      b. Substandard productivity
      c. Substandard quality of work
      d. Organizationally destructive activities, attitudes, and relationships
      ...
      <u>Prescribed disciplinary action steps will have been followed prior to termination</u>

      2. Immediate involuntary termination may result from:
      a. Theft
      b. Willful destruction of property
      ...
      g. Gross misconduct
      ...

    5. As a general manager, Walker asserts that she was directed to use the progressive discipline scheme referenced in the Guidelines and the Manual and that she did so. Walker further asserts that, based on her training and experience, she understood that deviations from the progressive discipline scheme were only permitted in cases involving gross or severe misconduct. LCCA disputes that this understanding by Walker was accurate or reasonable and asserts that Walker was subject to different disciplinary procedures than the employees she supervised based on her position within LCCA.

    6. As an employee of LCCA, Walker also received a Code of Conduct (the "Code") which required employees to report all suspected violations of its provisions. Among the Code's provisions was a prohibition against the diversion of prescription drugs from their intended recipients by LCCA employees.

    7. In May of 2002, another LCCA employee, Margaret Zaritz ("Zaritz"), told Walker that the manager of LCCA's facility in Greeley, Mindy Rickard ("Rickard"), had directed a co-worker to divert a patient's prescription drug to another co-worker who was experiencing severe pain and

-3-

who had left her own supply of this same medication at home and that Rickard had further advised this co-worker that she would replace the diverted medication with her own prescription for the same medication upon her return to the Greeley Facility. Zaritz further told Walker that she believed that Rickard's actions violated the Code's prohibition against diverting medication. Walker responded by telling Zaritz that she should report the suspected violation of the Code by Rickard as required by its provisions, which Zaritz did. As a result, LCCA conducted an investigation which culminated with Rickard being advised that any further violations would result in her immediate termination.

8. By the end of 2002, Walker acknowledges that the low rate of occupancy for the Longmont Facility represented a "crisis situation." At this time, the rate of occupancy for the facility was 85.6%. The rate of occupancy at the Longmont Facility continued to drop over the next four months, and the profits earned by LCCA on the Longmont Facility suffered a corresponding decline.

9. In this same time period, two other LCCA facilities, the Colorado Springs Facility and the Oregon Facility, were also experiencing low rates of occupancy. The general manager at the Oregon Facility was a female employee who was older than Walker. The general manager at the Colorado Springs Facility was a female employee who was younger than Walker but still in the protected class under the ADEA.

10. In February of 2003, Walker signed off on a chart reflecting the expected rate of occupancy for the Longmont Facility during the 2003 calendar year. Per this chart, the rate of occupancy for the Longmont Facility from February of 2003 through December of 2003 was expected to average 60 of 62 units, or over 95%, monthly.

11. Early in 2003, Phillip Herr ("Herr") became Walker's supervisor and began visiting the Longmont Facility. Following his first visit to the Longmont Facility on March 24 & 25, 2003, Herr sent Walker correspondence and notes from his visit. These notes reflect the occupancy rate for the facility (ie. 48 of 62 units) and Herr's request for an explanation of vacancies at the facility from Walker.

12. Herr made a return visit to the Longmont Facility on April 8, 2003. Herr's notes from this visit reflect communications with Walker regarding "the serious state of her community" and the need "to get aggressive at correcting the problem." Herr's notes from this visit also reflect a second request for an explanation of vacancies at the Longmont Facility from Walker.

13. Herr made a third visit to the Longmont Facility on April 16, 2003. Herr's notes from this visit again reflect communications with Walker regarding the rate of occupancy at the Longmont Facility.

14. Based on Herr's recommendation, Walker's employment as general manager for the Longmont Facility was terminated effective May 5, 2003. Walker testified in her deposition that she felt with "95 to 100 percent" certainty that the reason for her termination was her involvement in reporting the drug diversion incident involving Rickard approximately one year earlier. In contrast, LCCA asserts that Walker was terminated because management had lost confidence in her ability to increase the rate of occupancy at the Longmont Facility to desired levels.

15. At the time of Walker's termination, the rate of occupancy at the Longmont Facility was 68.4%. At this same time, the rates of occupancy at the Oregon Facility and the Colorado Springs Facilities were 82.4% and 94.2%, respectively. Throughout all of 2002-2003, the lowest rates of occupancy at the Oregon Facility and the Colorado Springs Facility were 73.9% and

87.1%, respectively.  Neither of the general managers at these facilities was terminated.

16.  LCCA hired a younger, male employee to replace Walker.  Under this individual's management, the rate of occupancy at the Longmont Facility increased to 93.3% in December of 2003 and to 100% by the end of February of 2004.

## II.  Standard for Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The non-moving party has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial.  *Celotex*, 477 U.S. at 323;  *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).  Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.  *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e).  These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves."  *Celotex*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

**A. Walker's Claims for Age and Sex Discrimination**

Plaintiff bears the initial burden of establishing a prima facie case of both age and sex discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). To meet this burden, a plaintiff must generally show (1) that plaintiff is a member of a protected class; (2) that plaintiff was qualified for the position or benefit at issue; (3) that plaintiff suffered an adverse employment action; (4) under circumstances giving rise to an inference of discrimination. *Sorbo v. United Parcel Serv.,* 432 F.3d 1169, 1173 (10th Cir. 2005); *Plotke v. White,* 405 F.3d 1092, 1100 (10th Cir. 1005). If a plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the adverse employment action taken. *McDonnell Douglas, supra.* If the defendant employer meets this burden, it is entitled to summary judgment unless the plaintiff can show that there is a genuine issue of material fact as to whether the stated reasons are pretextual. *Plotke, supra,* 405 F.3d at 1099.

Applying this framework to Walker's claims for age and sex discrimination, I must first determine whether she has met her burden of establishing a prima facie case. There is no question that Walker can satisfy the first three elements of a prima facie case of discrimination. The question of whether Walker can show that she was terminated under circumstances giving rise to an inference of unlawful age or sex discrimination is, however, more problematic.

One manner in which a plaintiff can show circumstances giving rise to an inference of discrimination is through evidence that the defendant employer treated similarly situated employees more favorably than plaintiff. *Sorbo*, *supra*. Here, however, both the general manager of the Colorado Springs Facility and the general manager of the Oregon Facility, neither of whom was terminated in response to low rates of occupancy at their facilities, were in the same protected classes as Walker. Further, at all applicable times, a majority of LCCA's employees were in these same protected classes. Nonetheless, the fact that Walker was replaced by a younger man does provide some evidence to support an inference of age and sex discrimination by LCCA. Additionally, it is not entirely clear that a plaintiff must present evidence of circumstances giving rise to an inference of discrimination to establish a prima facie case of age or sex discrimination in the Tenth Circuit. *See Sorbo*, *supra*, 432 F.3d at 1173 n.5 (recognizing apparent inconsistencies in Tenth Circuit authority as to whether prima facie case of employment discrimination consists of three or four elements). Accordingly, I decline to enter summary judgment on the basis that Walker cannot meet her burden of establishing a prima facie case of discrimination and therefore proceed to the second step of the *McDonnell Douglas* framework; that is, whether LCCA has met its burden of articulating a legitimate, non-discriminatory reason for Walker's termination.

LCCA asserts that Walker was terminated because after several months of decline in the

rate of occupancy at the Longmont Facility, management had lost confidence in her ability to increase this rate to desired levels. In view of the undisputed evidence regarding the relationship between the rate of occupancy and profits and the declining rate of occupancy at the Longmont Facility far below acknowledged expectations, I conclude that LCCA has met its burden of articulating a legitimate, non-discriminatory reason for Walker's termination. Accordingly, the burden now shifts to Walker to show that there is a genuine issue of material fact as to whether LCCA's proffered reason for her termination is pretextual.

To show pretext, Walker points to alleged "weaknesses, implausibilities, inconsistencies, incoherencies, and contradictions" with LCCA's explanation for her termination. Specifically, Walker asserts that these deficiencies in LCCA's explanation are demonstrated by the following: (1) LCCA's admission that the low rate of occupancy at the Longmont Facility was the result of factors beyond Walker's control; (2) LCCA's representations to her that the rate of occupancy at the facility was not an issue; (3) Walker did all that was asked of her by LCCA; (4) Walker had 5 move-ins scheduled for the Longmont Facility for the month she was terminated; and (5) neither the general manager for the Colorado Springs Facility nor the Oregon Facility were terminated despite the low rates of occupancy at these facilities. These assertions are, however, either unsupported by the evidence that has been presented or insufficient to establish pretext by LCCA.

First, Walker has failed to direct me to any evidence that would demonstrate an admission by LCCA that the low rate of occupancy at the Longmont Facility was caused by factors beyond her control. Moreover, the undisputed fact that Walker's successor was able to increase the occupancy rate at the Longmont Facility to 100% in less than a year provides evidence to the contrary. Likewise, Walker has failed to present any evidence that LCCA represented to her that

the rate of occupancy at the Longmont Facility was not an issue and there is ample evidence that this was in fact a significant concern. Among other things, Walker was clearly on notice that the facility's occupancy rate was expected to average 95% during 2003 and has admitted that the Longmont Facility was in a "crisis situation" because of its significantly lower rate of occupancy beginning in late 2002. Finally, neither Herr's deposition testimony nor the undisputed evidence regarding the rate of occupancy at the Longmont Facility during the time at issue support Walker's assertion that she had done everything that was asked of her.

Walker's remaining allegations, even if accepted as true, fail to raise a genuine issue as to whether LCCA's stated reason for her termination was pretextual. In this regard, even if Walker had effectuated 5 move-ins for the month in which she was terminated, the occupancy rate at the Longmont Facility would still fall well below the expected rate of 95%. The fact that the managers of the Colorado Springs and Oregon Facilities were not terminated in response to low occupancy rates likewise fails to raise a triable issue regarding pretext both because the occupancy rates at these facilities did not fall to the same level as that at the Longmont Facility and because the general managers at these facilities were also women age 40 or over and therefore in the same protected classes as Walker.

Because Walker has failed to meet her burden of establishing a factual issue as to whether LCCA's stated reason for her termination was a pretext for unlawful discrimination, LCCA is entitled to summary judgment on Walker's claims for age and sex discrimination.

**B. Walker's Claims for Breach of Contract and Promissory Estoppel**

Generally, under Colorado law, an employee hired for an indefinite period of time is presumed to be an at-will employee whose employment may be terminated without cause or notice

and whose termination does not give rise to a cause of action. *Collins v. Colo. Mountain College,* 56 P.3d 1132, 1135 (Colo. 2002). An at-will employee may, however, be able to enforce the termination procedures in an employee manual under the theories of implied contract or promissory estoppel. *Id.*

Here, Walker had no express employment contract with LCCA, and the Guidelines state that her employment was therefore at-will. Nonetheless, Walker argues that LCCA's written policies and procedures regarding discipline resulted in an enforceable employment contract that LCCA breached when it terminated her employment. In its motion, LCCA argues that no employment contract could have resulted in this case because of the disclaimers contained in its written policies and procedures. In this regard, LCCA relies on the provisions in the Guidelines set forth above stating that nothing contained in any of LCCA's materials could alter the at-will nature of Walker's employment and that the progressive discipline process outlined therein reflects only the usual and preferred process for addressing employee behavior issues and that conduct of any type that causes management to lose confidence in an employee's ability to do their job could result in immediate discharge.

The mere inclusion of disclaimers in employment manuals does not necessarily preclude the formation of an employment contract under Colorado law. *Evenson v. Colo. Farm Bureau Mutual Ins. Co.,* 879 P.2d 402, 409 (Colo. App. 1993). Rather, an employer's willingness to be bound by termination provisions in its employment manuals may nonetheless be manifested if the disclaimers are not clear or conspicuous or if there is a conflict between the disclaimers and other provisions or practices. *Id.*; *Allabashi v. Lincoln Nat'l Sales Corp.,* 824 P.2d 1, 3 (Colo. App. 1991).

Here, Walker has presented sufficient evidence regarding the seemingly conflicting

disciplinary provisions in the Manual and the Guidelines and her own training and experience at LCCA to create a factual issue as to whether there was an employment contract that required LCCA to follow certain procedures in terminating Walker's employment that precludes summary judgment on Walker's claim for breach of contract.  This same evidence is sufficient to create a factual issue as to whether LCCA should have reasonably expected Walker to consider the materials it provided a commitment to follow the specified termination procedures and whether Walker reasonable relied on such procedures to her detriment that precludes summary judgment on Walker's claim for promissory estoppel.  *See Continental Airlines, Inc. v. Keenan,* 731 P.2d 708, 712 (Colo. 1987) (outlining elements of promissory estoppel claim in context of wrongful discharge cases).  Summary judgment on these claims is also precluded by additional factual issues as to whether LCCA complied with any binding procedures in terminating Walker's employment.  Although extremely close, I conclude that summary judgment on these claims must be denied.

## C. Walker's Claim for Wrongful Discharge in Violation of Public Policy

To establish a prima facie case of wrongful discharge in violation of public policy, an employee must show that:

> (1) the employer directed the employee to perform an illegal act as part of the employee's work-related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; (2) the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; (3) the employee was terminated as a result of refusing to perform the act directed by the employer or for exercising the privilege to which the employee was entitled; and (4) the employer was aware or reasonably should have been aware that the employee's refusal to comply with the order or directive was based on the employee's reasonable belief that the action ordered was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker.

*Hoyt v. Target Stores,* 981 P.2d 188, 190-1 (Colo. App. 1998).

LCCA first argues that it is entitled to summary judgment on Walker's claim for wrongful discharge in violation of public policy because Walker's conduct in urging Zaritz to report Rickard's diversion of prescription medication from a resident to a co-worker did not implicate any issue of public policy. I disagree and conclude that the unlawful diversion of prescription medication from its intended recipient is a matter of public concern and that Walker's involvement in reporting the incident involving Rickard related to a public duty.

LCCA next argues that Walker's claim for wrongful discharge must fail because she cannot demonstrate a causal link between her involvement in reporting Rickard's behavior and the termination of her employment. In response, Walker reiterates many of the same allegations she made in support of her contention that LCCA's proffered reason for her termination was pretextual. Once again, I find that these allegations are either unsupported by the evidence that has been presented or insufficient to establish a genuine issue of material fact as to whether LCCA terminated Walker's employment for something other than the proffered reason of the low rate of occupancy that the Longmont Facility was experiencing under her supervision. Moreover, I find Walker's argument that LCCA somehow sabotaged her efforts to improve the rate of occupancy at the Longmont Facility so it could terminate her for her involvement in reporting Rickard's conduct speculative and entirely implausible. Accordingly, I conclude that Walker cannot meet her burden of establishing a prima facie case of wrongful discharge in violation of public policy and that LCCA is therefore entitled to judgment as a matter of law on this claim.

For the reasons set forth above, , IT IS ORDERED as follows:

1. Defendants' Motion for Summary Judgment [Doc # 26] is GRANTED IN PART and

DENIED IN PART.

2. Plaintiff's First, Second, and Fifth Claims for Relief are hereby DISMISSED WITH PREJUDICE.


Dated: June __2__, 2006 in Denver, Colorado.

              BY THE COURT:

              ___s/Lewis T. Babcock_____
              LEWIS T. BABCOCK, CHIEF JUDGE